# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL LEE PICCOLOTTI,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,[1]

Defendant.

_______________________________________/

Case No. 1:26-cv-02522-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I. INTRODUCTION

Plaintiff Michael Lee Piccolotti ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits (DIB) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. FACTUAL BACKGROUND

On October 1, 2024, Plaintiff filed a claim for DIB payments, alleging he became disabled

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 15.)

on September 25, 2024, due to back, knee, shin, ankle, shoulder, and sciatica pain; low vision; migraines; and posttraumatic stress disorder (PTSD). (Administrative Record ("AR") 17, 64, 71.)

Plaintiff was born in 1991 and was 33 years old on the alleged onset date. (AR 26, 64, 71.) He has at least a high school education and has past work as a construction inspector. (AR 26, 27, 41, 55, 78, 188, 189.)

**A. Relevant Medical Evidence**[3]

An MRI of Plaintiff's lumbar spine performed in October 2024 showed "disc desiccation most predominant at L4–5 and L5–S1" and "fluid in his right facet joint at L4-5 and bilaterally at L5-S1." (AR 888.)

In November 2024, Plaintiff presented for an evaluation by a neurosurgeon. (AR 887, 888–90.) On examination, Plaintiff had 5/5 strength in his bilateral lower extremities. (AR 888.) The neurosurgeon advised Plaintiff that he had "significant disc desiccation at L5-S1 and to a lesser extent at L4-5" and "fluid in his facet joints," which he indicated is "contributing to [Plaintiff's] lower back pain. (AR 889.) Plaintiff was assessed with "[d]egeneration of intervertebral disc of lumbar region with discogenic back pain and lower extremity pain" and "[c]hronic radicular lumbar pain" and advised to follow up with pain management. (AR 889.) Surgery was not recommended. (AR 889.)

In December 2024, Plaintiff presented for a comprehensive internal medicine evaluation by Roger Wagner, M.D. (AR 746–50.) Plaintiff complained of thoracolumbar back pain, left knee pain, left shoulder pain, and bilateral eye pinguecula. (AR 746–47.) Dr. Wagner noted that radiological studies have shown "disc disease" and a "minor tear of the medial collateral ligament." (AR 746.) Plaintiff reported that he currently lives with his partner and two children, and that he cooks, cleans, drives, shops, walks for exercise, and performs his own activities of daily living without assistance. (AR 747.)

On examination, Dr. Wagner observed that Plaintiff "was easily able to get on and off the exam table and easily able to bend at the waist to take off shoes and socks and put them back on,

[3] As Plaintiff's assertion of error is limited to the ALJ's consideration of Plaintiff's subjective complaints, only evidence relevant to this argument is set forth below.

demonstrating good dexterity and good flexibility." (AR 747.) He had slightly decreased range of motion in his left knee. (AR 748–49.) Plaintiff's straight leg raising test was "slightly positive on the left at 60 degrees." (AR 749.) Dr. Wagner found Plaintiff's back pain was "most consistent with occasional musculoligamentous strain" and that his "visual acuity was good." (AR 749–50.)

Plaintiff presented for an epidural steroid injection to treat lumbar spinal pain in September 2025. (AR 902–15.) His physical examination showed ambulation without an assistive device; excessive muscle tightness in his back; tenderness at L4-5 and L5-S1; spasms in the lumbar musculature bilaterally; limited active range of motion with forward flexion, back extension, and lateral twisting and bending; normal motor and sensory function; positive straight leg raising test on the left; and positive Kemp's test on the left. (AR 904.) Later that same month, Plaintiff complained of having migraine headaches for the last year that have increased in frequency from 1–2 per month to 1–2 per week. (AR 889–90.)

**B. Plaintiff's Statement**

In October 2024, Plaintiff completed an adult function report. (AR 202–209.) He reported that he cannot sit, stand, walk, or lift for longer than 30 minutes at a time, and that his anxiety, PTSD, and depression keep him from being able to maintain "professional relationships and consistent stable work environments." (AR 202.) He stated he had difficulty dressing and bathing himself due to mobility issues. (AR 203.) Plaintiff reported that he prepares meals once or twice a week, and that his partner prepares most of his meals. (AR 204.) He can clean at "waist height" and perform sweeping, with his partner assisting in "most cleaning" due to mobility and joint/nerve pain. (AR 204.) Plaintiff reported that he drives and shops. (AR 205.) According to Plaintiff, he needs reminders to do tasks and to take medication. (AR 204.)

Plaintiff stated that he has trouble getting along with others due to anxiety and PTSD agitation and handles stress and changes in routine "poorly." (AR 206–208.) He reported that he has difficulty with memory, completing tasks, and concentration, and can only pay attention for 10–15 minutes at a time. (AR 207.)

**C. Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on January 9, 2025,

and again on reconsideration on April 1, 2025. (AR 17, 80–84, 85–88.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR 95–134.) At a hearing on November 6, 2025, Plaintiff appeared with counsel via telephone and testified before an ALJ as to his work history and alleged disabling conditions. (AR 38–53.) A Vocational Expert (VE) also testified at the hearing. (AR 53–60.)

**1. Plaintiff's Testimony**

Plaintiff testified that he has migraines at least once per week which incapacitate him for about two days. (AR 45–46, 61.) He stated that when his back herniations are "trigger[ed]," he gets sciatica in his left leg that prevents him from walking and requires him to "lay down and do traction for about to five hours a day intermittently." (AR 46.) His inability to get out of bed due to immobility causes stress, anxiety, and depression. (AR 51.) According to Plaintiff, he has an onset of more frequent migraines with stress. (AR 52.)

Plaintiff testified that he is "pretty sedentary" for the most part but will go to his kids' gymnastics class or on small walks if he is mobile. (AR 48.) He will do dishes if he's able to stand up without too much bending and can fold laundry if it is at waist level. (AR 48.) He testified that he has difficulty performing chores like scrubbing, which require bending up and down. (AR 48–49.) His partner helps him shower and get dressed and prepares most meals, as "standing in the kitchen for a long time tends to put a lot of strain on [his] low back." (AR 51–52.) Plaintiff testified that he does not socialize with others on a regular basis. (AR 49–50.)

**2. Vocational Expert's Testimony**

The VE testified at the hearing that Plaintiff had past work as a construction inspector. (AR 55.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 55.) The VE was also to assume this person is limited to a light exertional level and would also be limited in that they would be able to occasionally climb ramps, stairs, ladders, ropes and scaffolds; would occasionally be able to balance, crawl, crouch, kneel and stoop; should not work in environments that would expose them to unprotected heights or machinery with dangerous moving mechanical parts; would be able to perform jobs of a non-complex nature, requiring the performance of no more than simple, routine tasks; and would be able to maintain occasional contact with

coworkers and members of the general public. (AR 55–56.) The VE testified that such a person could not perform Plaintiff's past work but could perform other light jobs in the national economy, such as marker, Dictionary of Operational Titles (DOT) code 209.587-034 with a specific vocational preparation (SVP)[4] of 2; cleaner, DOT code 323.687-014 with an SVP of 2; and small products assembler, DOT code 739.687-030 with an SVP of 2. (AR 56–57.) With the additional limitations in a second hypothetical that the first hypothetical person could stand and walk two out of eight hours in an eight-hour workday and would require the use of a cane for ambulation, the VE testified that none of the identified jobs would be available, but that there would be other light jobs available such as electronic assembler, DOT code 729.687-010 with an SVP of 2; production assembler, DOT code 706.684-022 with an SVP of 2; "solderer," DOT code 813.684-022 with an SVP of 2; and a sedentary job available of document preparer, DOT code 249.587-018 with an SVP of 2. (AR 57–58.) The VE further testified that if the second hypothetical person would be absent from or leave work two days per month on an unscheduled basis, there would be no work available. (AR 59.)

**D. The ALJ's Decision**

In decision dated November 26, 2025, the ALJ concluded that Plaintiff was not disabled. (AR 17–28.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 19–28.) The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2029, and he had not engaged in substantial gainful activity since September 25, 2024, the alleged onset date (step one). (AR 19.) At step two, the ALJ found Plaintiff's degenerative disc disease of the lumbar spine; migraine headaches; depression; and PTSD to be severe through the date last insured. (AR 19.) The ALJ further found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") through the date last insured (step three). (AR 19–21.)

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC through the date last insured:

> to perform light work as defined in 20 CFR 404.1567(b) except he can frequently climb ramps, stairs, ladders, ropes and scaffolds, and he is frequently able to balance, crawl, crouch, kneel and stoop. He should not work in environments exposing him to unprotected heights or machinery with dangerous, moving mechanical parts, and he can perform jobs of a non-complex nature requiring the performance of no more than simple, routine tasks. In addition, the claimant can maintain occasional contact with coworkers and members of the general public.

(AR 21–26.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 26.)

The ALJ determined that Plaintiff had could not perform his past relevant work (step four) but that, given his RFC, he could perform a significant number of jobs in the national economy, including specifically marker, cleaner, and small parts assembler (step five). (AR 26–28.) The ALJ concluded Plaintiff was not disabled from September 25, 2024, through the date of the decision. (AR 28.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on February 10, 2026. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work."

*Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's

determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted)

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting his allegations of physical dysfunction and psychological limitations. (Docs. 18, 23.) The Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 22.) The Court agrees with Plaintiff and will remand for further proceedings.

### A. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[6] *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social*

---

[6] The Court rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 22 at 4 n.3.)

*Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B. Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 26.) In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

In support of the conclusion that Plaintiff's "statements and allegations" were "not fully consistent with the medical and other evidence," the ALJ stated:

> For example, he alleged suffering from a bilateral eye pinguecula, which limits his ability to work, but that is inconsistent with the record, including Dr. Wagner's report that his visual acuity is good, and he has not had any procedures for it. [Plaintiff] further alleged his ability to bend is "affected" but that is inconsistent with Dr. Wagner's report that he was easily able to bend at the waist to take off shoes and socks and put them back on, and that he demonstrated good dexterity and good flexibility. Overall, [Plaintiff] alleges suffering from significant limitations, which prohibit him from working, but that is inconsistent with reports showing he ambulated with no assistive device, his motor and sensory function were within normal limits and he exhibited five out of five motor strength in the bilateral lower extremities. An alleged inability to work is also inconsistent with [Plaintiff's] report that he cooks, cleans, drives, shops and performs activities of daily living without assistance.

(AR 26 (internal citations omitted).) Thus, the ALJ purported to reject Plaintiff's subjective statements based upon inconsistencies with the objective medical record and with his activities. The Court must determine whether these were clear and convincing reasons for discounting Plaintiff's statements.

**1. Objective Medical Evidence**

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base their decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor evaluating his subjective complaints.

However, if an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[G]eneral findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible"). Importantly, an ALJ may not "cherry-pick" medical evidence that favors disability without considering its context in the record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

As noted above, the ALJ found the objective medical record showed Plaintiff "was easily able to bend at the waist to take off shoes and socks and put them back on," "demonstrated good dexterity and good flexibility," he "ambulated with no assistive device," his "motor and sensory function were within normal limits," and he "exhibited five out of five motor strength in the bilateral lower extremities," citing AR 747, 888 and 904. However, these same records also document objective findings—not mentioned by the ALJ in the discussion of Plaintiff's subjective complaints—that appear to be consistent with Plaintiff's alleged standing and walking limitations, such as slightly decreased motion in his left knee (AR 748–49); positive straight leg raising test on

the left side (AR 749); "significant disc desiccation at L5-S1 and to a lesser extent at L4-5" (AR 888–89); "fluid in his facet joints" (AR 888–89); assessments of "[d]egeneration of intervertebral disc of lumbar region with discogenic back pain and lower extremity pain" and "[c]hronic radicular lumbar pain" (AR 889); excessive muscle tightness in his back; tenderness at L4-5 and L5-S1 (AR 904); spasms in the lumbar musculature bilaterally (AR 904); limited active range of motion with forward flexion, back extension, lateral twisting and bending (AR 904); positive straight leg raising test on the left (AR 904); and positive Kemp's test on the left (AR 904). Based on these cited records, the ALJ's conclusion that "[t]he medical evidence of record does not support the extent of [Plaintiff's] subjective complaints (AR 26) appears based on "cherry-picked" notations from the medical evidence, which is improper. *See Chynna S. v. Dudek*, No. 5:24-CV-01127-GJS, 2025 WL 1150651, at *11 (C.D. Cal. Apr. 16, 2025) ("An ALJ's proffered reason for rejecting a claimant's credibility is not convincing when it is based on a mischaracterization of the record or a failure to account for the portions of the record that contradict the ALJ's desired conclusion.") (citing *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ may not develop evidentiary basis of record "by not fully accounting for the context of materials or all parts of the testimony and reports")). *See also Ghanim*, 763 F.3d at 1164.

Moreover, the ALJ fails to explain how evidence that Plaintiff had good dexterity and flexibility, ambulated with no assistive device, and had normal motor, sensation, and strength in his lower extremities is inconsistent with Plaintiff's complaints of frequent and debilitating migraines (AR 45–46, 61) and symptoms of depression and PTSD (AR 51, 202, 206–208). *See, e.g., Ozuna v. Comm'r of Soc. Sec.*, No. 1:24-CV-00385-JLT-GSA, 2026 WL 252039, at *2 (E.D. Cal. Jan. 30, 2026) (finding the ALJ's discussion of "normal" examination findings did not suffice to discount the claimant's testimony about debilitating back and leg pain because the discussion did "not specifically, clearly, and convincingly connect the examination findings to [the claimant's] testimony"); *Maldonado v. Comm'r of Soc. Sec.*, No. 1:20-CV-01506-EPG, 2022 WL 1138113, at *3 (E.D. Cal. Apr. 18, 2022) ("[W]hile it is true that Plaintiff had some normal physical examination findings relating to his strength, range of motion, sensation, gait, and reflexes, the ALJ failed to explain how any of these findings were inconsistent with Plaintiff's testimony, which generally

alleged disabling pain in his feet, hands, and back."). In fact, the ALJ's discussion of Plaintiff's statements and allegations is entirely devoid of any mention, much less analysis, of these subjective complaints, in contravention of Ninth Circuit precedent. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.").

For these reasons, the Court is unable to find the ALJ met the burden to identify evidence in the record that conflicts with Plaintiff's statements concerning the severity of his back pain, migraines, and psychological symptoms. The purported inconsistencies with the objective medical record are not clear and convincing reasons to support the ALJ's decision.[7]

**2. Level of Activity**

The ALJ also pointed to Plaintiff's activity level as a reason to discredit his subjective complaints. (AR 26.) An ALJ is "permitted to consider daily living activities" in addressing a Plaintiff's subjective statements. *Burch*, 400 F.3d at 681. Daily activities "form the basis for an adverse credibility determination" when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina*, 674 F.3d at 1112 (factors to consider in evaluating a claimant's statements include "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting").

The ALJ observed that Plaintiff reported to the consultative examiner that he "cooks, cleans, drives, shops and performs activities of daily living without assistance." (AR 26.) However, the ALJ did not consider the full context of these reported activities during the relevant time period.

---

[7] The Commissioner attempts to provide reasons why the ALJ could have found Plaintiff's subjective complaints inconsistent with the objective medical evidence, such as MRI results and symptom control with treatment. (*See* Doc. 22 at 5–6.) But the ALJ did not base its determination on this evidence, and thus the Commissioner's argument is the sort of *post hoc* rationale that is impermissible in the Social Security context. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) (It is error to affirm the agency's decision "for a reason that the ALJ did not assert."); *Burrell*, 775 F.3d at 1138 ("We are constrained to review the reasons the ALJ asserts.").

Accompanying observations, statements, and testimony that qualified this self-report went unmentioned. This evidence shows that due to back mobility issues, migraine pain, and PTSD symptoms, Plaintiff could perform these tasks only with assistance, reminders, and/or to a limited extent. (*See* AR 48 (can wash dishes only if he is able to stand up without too much bending and can fold laundry only if it is at waist level); AR 51–52 (partner helps him shower and get dressed and prepares most meals, as "standing in the kitchen for a long time tends to put a lot of strain on [his] low back."); AR 203 (difficulty dressing and bathing himself due to mobility issues); AR 204 (partner prepares most of his meals); AR 204 (can only clean at "waist height" and perform sweeping, with his partner assisting in "most cleaning" due to mobility and joint/nerve pain); AR 204 (needs reminders to do tasks and to take medication).) Thus, the activities identified do not constitute a clear and convincing reason to discount Plaintiff's subjective complaints. *See Reddick*, 157 F.3d at 722–723, 723 n.1 (finding error where the ALJ failed to account for fact that the claimant performed daily activities with help, in pain, and required periodic rest.); *see also Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("That [Plaintiff] could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period.");

In sum, the Court finds that the ALJ failed to meet the burden to identify clear and convincing reasons supporting the adverse credibility determination, which were "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The Court is unable to find the ALJ's decision is supported by substantial evidence in the record.

The error is not harmless. Had the ALJ credited Plaintiff's statements related to his back issues, migraine pain, and PTSD symptoms and assessed a more restrictive RFC, the disability determination may have been different. (*See, e.g.*, AR 59 (VE testimony that being absent from or leaving work two days per month on an unscheduled basis is work preclusive.).) Thus, it is not "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. *See also Molina*, 674 F.3d at 1115.

### C. Remand for Further Proceedings

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Here, the ALJ failed to identify legally sufficient reasons to reject Plaintiff's subjective statements, which impacted the RFC determination. A remand for further proceedings regarding the subjective statements of a claimant is an appropriate remedy. *See, e.g., Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). The Court concludes that a remand for further proceedings to properly assess Plaintiff's subjective symptom statements is proper in this case.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Michael Lee Piccolotti and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **November 16, 2026**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE